IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

OSO SWEET FARMS, LLC,

        Plaintiff,

vs.

UNITED STATES DEPARTMENT OF
AGRICULTURE, FEDERAL CROP
INSURANCE CORPORATION and
RISK MANAGEMENT AGENCY,

        Defendants.

_____/

## COMPLAINT

**COMES NOW** the Plaintiff, by and through its attorneys, the Law Offices of Daniel C. Jenkins, LLC and Hawkins, Hawkins & Burt, LLP, and state as follows:

### PARTIES

1.    OSO Sweet Farms, LLC. (hereinafter Plaintiff or "OSO") is a Georgia limited liability company and is insured under a federally-reinsured crop insurance policy issued by NAU Country Insurance Company (hereinafter "NAU") pursuant to the provisions of the Federal Crop Insurance Act. 7 U.S.C. §1501 *et seq.* ("FCIA"). The policy number is GA-9005775-20. The policy is for the 2020 crop year and applies to farmland in Tattnall County, Georgia ("2020 Policy"). A crop year is defined as the period within which the insured crop is normally grown and is designated by the calendar year in which the insured crop is normally harvested.

2.    Defendant, United States Department of Agriculture (hereinafter "USDA"), by and through its wholly owned subsidiary Defendant Federal Crop Insurance Corporation (hereinafter "FCIC") and its daughter agency Defendant, Risk Management Agency (hereinafter "RMA") (collectively, "Federal Defendants")

reinsured the 2020 Policy of crop insurance underwritten by NAU pursuant to a Standard Reinsurance Agreement (hereinafter "SRA"). The Federal Defendants may be served with process of this Court by serving copies of the Summons and Complaint upon the United States Attorney for the Southern District of Georgia at the following address:

> David Estes, Esq
> United States Attorney for
> the Southern District of Georgia
> 22 Barnard Street, Suite 300
> Savannah, Georgia 31401

3.  Plaintiff's cause of action arises out of Defendant RMA's adverse response to several requests for interpretation of policy ("IoP") and requests for Final Agency Determination ("FAD") related to the Common Crop Insurance Policy ("CCIP") and certain handbooks and manuals published by RMA. The Common Crop Insurance Policy is sometimes referred to as the Basic Provisions or the CCIP Basic Provisions. For the purposes of this Complaint, the Common Crop Insurance Policy will be referred to only as the CCIP.

4.  The terms of the CCIP were adopted by regulation published by FCIC and contained in 7 C.F.R. §457.8. Attached hereto as Exhibit 1 is a copy of the current version of 7 C.F.R. §457.8.

5.  Plaintiff's administrative remedies were exhausted when Defendant USDA's National Appeals Division decided that the IoP's and FAD's, as determined by RMA, were matters of general applicability; and, therefore, not subject to further administrative review within the USDA's National Appeals Division pursuant to 7 C.F.R. Sec. 768(g), 7 C.F.R. Sec. 400.96 and 7 C.F.R. Sec. 11.6(a).

6.  Therefore, the United States District Court for the Southern District of Georgia has exclusive jurisdiction over this action pursuant to 5 U.S.C. Sec. 701, *et seq.* 7 C.F.R. Sec. 11.13, 7 U.S.C. Sec 1508, and 28 U.S.C. Sec. 1331.

7. All the wrongs complained of herein arise from regulatory interpretations made by the Federal Defendants with respect to the federally reinsured policy of crop insurance in Tattnall County, Georgia. Venue is therefore appropriate pursuant to 28 U.S.C. Sec. 1391(c).

## ALLEGATIONS AS TO ALL COUNTS

8. NAU issued a crop insurance policy Number GA-942-9005775-19 for the 2019 Crop Year for Vidalia Onions grown by the Plaintiff in Tattnall County, Georgia on certain identified fields (the "2019 Policy"). The end of the insurance period for the 2019 Crop Year was June 1, 2019.

9. In the spring of 2019, the Plaintiff suffered losses to its onion crop grown on some of the fields insured under the 2019 Policy. The 2019 loss was adjusted, and the amount of the indemnity payable was agreed upon.

10. The CCIP's are continuous policies subject to adjustment based upon changes in locations and crops. Consequently, effective June 1, 2019, NAU issued policy Number GA-942-9005775-20, identified in Paragraph 1, above, to Plaintiff for the 2020 Crop Year for the Vidalia Onions grown by the Plaintiff in Tattnall County, Georgia (the "2020 Policy"). The fields insured under the 2020 Policy were substantially the same, *but not identical* to the fields insured under the 2019 Policy. The 2020 Crop Year ended on June 1, 2020.

11. All federal crop insurance policies contain several parts.
    (a) The first part of the full crop insurance policy is the CCIP, or, as stated above, the *Basic Provisions*. These are the provisions that apply to all policies issued under the crop insurance program.
    (b) The second part of the full crop insurance policy is the *Crop Provisions*. These provisions apply to the specific crop being insured under the crop insurance program.
    (c) The third part of the crop insurance policy is the *Special Provisions*. These provisions apply to the specific crop being grown in the specific state and county.

12. The policy issued to the Plaintiff was under an insurance plan described as an Actual Production History Plan, or APH Plan.

13. Under an APH Plan, the producer (farmer) is insuring against losses of production to the producers insured crop based upon a percentage of the producer's actual production history. The actual production history is determined on a field-by-field calculation and is based upon proven records of production over the course of several years. If there is no history of production on a given field, the CCIP provides that production will be assigned to the field based upon yields determined by RMA, which are essentially county averages for the type of crop in the county.

14. Plaintiff experienced a loss on its 2020 onion crop in March of 2020 due to excess moisture. The Plaintiff submitted a timely claim for an indemnity payment on the 2020 Policy to NAU.

15. NAU investigated the claim and, on August 21, 2020, advised the Plaintiff of its compliance review. NAU described two specific problems which required NAU to change the calculation of the amount of the claim, as follows:

(a) Failure to provide an acceptable production report on a timely basis.

(b) Actual production records as determined by NAU exceeded required tolerances.

A copy of the August 21, 2020, letter is attached hereto as Exhibit 2.

16. On September 25, 2020, NAU advised the Plaintiff that as a result of the changes in the calculations, there would be no indemnity due. A copy of the September 25, 2020, letter is attached hereto as Exhibit 3.

17. The Plaintiff timely disputed the determination by NAU and, pursuant to Paragraph 20 of the CCIP, demanded arbitration on January 7, 2021.

18. Paragraph 20 of the CCIP provides, in part, as follows:

> **20. Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.**
> (a) If you and we fail to agree on any determination made by us except those specified in section 20(d) or (e), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance

> with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us, or our agent or loss adjuster, is disqualified from hearing the dispute.
> (1) All disputes involving determinations made by us, except those specified in section 20(d) or (e), are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.
> (i) Any interpretation by FCIC will be binding in any mediation or arbitration.
> (ii) Failure to obtain any required interpretation from FCIC will result in the nullification of any agreement or award.
> (iii) An interpretation by FCIC of a policy provision is considered a determination that is a matter of general applicability.
> (iv) An interpretation by FCIC of a procedure may be appealed to the National Appeals Division in accordance with 7 CFR part 11.

19. The language of the above portions of Paragraph 20 are designed so that an arbitrator can only determine questions of fact. The Federal Defendants do not want arbitrators to make policy or procedure determinations because such determinations must be applicable to the entire crop insurance program. The Federal Defendants assert that only they can make determinations that are applicable to the entire crop insurance program. *See* Federal Register, Volume 69, No. 153, Page 48652, at 48715, August 10, 2004. The authority of the arbitrator to make factual determinations is at issue in this matter.

20. An arbitrator was agreed upon, and the parties prepared for an arbitration scheduled for July 13, 2021.

21. Three days before the arbitration hearing, NAU, believing that the arguments to be made by the Plaintiff required the arbitrator to make policy and procedure interpretations, terminated the arbitration pending the submission to the Federal Defendants of certain requests for interpretation of the CCIP pursuant to 7 C.F.R. Part 400, subpart X, specifically 7 CFR §§ 400.765-400.768.

22. Considering NAU's position, on or about September 20, 2021, the Plaintiff and NAU initially submitted one request for an interpretation of a policy provision (IoP) and one request for a Final Agency Determination (FAD) to RMA as more particularly described in Count I and Count III of this Complaint.

23. Subsequently, on or about February 10, 2022, the Plaintiff submitted another request for an IoP to RMA, as more particularly described in Count IV of this Complaint.

24. Finally, on or about June 6, 2022, the Plaintiff submitted a request for a FAD to RMA, as more particularly described in Count II of this Complaint.

25. Every determination made by RMA to these requests was adverse to the position of the Plaintiff.

26. Review of these IoP's and FAD's was sought with the National Appeals Division ("NAD") of the Defendant USDA. In each instance, the review was denied by NAD because the determinations by the Federal Defendants were of general applicability. Consequently, as to each request, the Plaintiff has exhausted its administrative remedies.

27. The foregoing requests and determinations by RMA are described in more detail in Counts I through IV, below. However, in order to fully understand the position of the Plaintiff in each Count, certain basic facts are alleged below which are applicable to all Counts.

28. The Federal Crop Insurance Act was initially passed in 1938 to "promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance . . .". The Defendant FCIC was established to "carry out the purposes of this subchapter . . ." 7 U.S.C. §1503. Congress substantially amended the Act in 1980. The most significant change was to provide that private companies (called Approved Insurance Providers ("AIP"'s)) could sell and service the policies that were developed by FCIC. NAU is an AIP.

29. Section 1506(o) of the FCIA provides that "The Secretary [Secretary of Agriculture] and the Corporation [FCIC] are each authorized to issue such regulations as are necessary to carry out this subchapter."

30. FCIC has issued regulations to carry out the terms of the FCIA. One such regulation, 7 C.F.R. §457.8, is the CCIP. *See* Exhibit 1.

31. The CCIP, as set forth in 7 C.F.R. §457.8, was first published in the Federal Regulations on January 14, 1991. *56 FR 1351*. The CCIP has been amended many times since 1991, all through the proper procedures required by §553 (b) and (c) of the Administrative Procedure Act, 5 U.S.C. §551 *et seq.*

32. There are two general provisions contained in CCIP that are relevant to the issues raised in this Complaint.

33. The PREAMBLE to the CCIP contained in §457.8 effective for the 2020 crop year reads in pertinent part as follows:

> "We will use the procedures (handbooks, manuals, memoranda and bulletins), as issued by FCIC and published on RMA's website at http://www.rma.usda/gov/ or a successor website, in the administration of this policy".

The foregoing language was not included in the version of §457.8 published in the Federal Register on January 14, 1991, Volume 56, Number 9, 1345, at page 1351. The 2020 wording of the Preamble was initially presented in the Proposed Rules published in the Federal Register on September 18, 2002, Volume 67, Number 181, 58912, at page 58925, and were adopted as a Final Rule published in the Federal Register on August 10, 2004, Volume 69, No. 153, Page 48652, at page 48740.

34. The AGREEMENT TO INSURE contained in the §457.8 effective for the 2020 crop year reads as follows:

> "AGREEMENT TO INSURE: In return for the payment of the premium, and subject to all the provisions of this policy, we agree with you to provide the insurance as stated in this policy. If there is a conflict between the Act, the regulations published at 7 CFR chapter IV, and the procedures as issued by FCIC, the order of priority is :(1) the Act; (2) the regulations; and (3) the procedures as issued by FCIC, with (1) controlling (2), etc. If there is a conflict between the policy provisions published at 7 CFR part 457 and the administrative regulations published at 7 CFR part 400, the policy provisions published at 7 CFR part 457 control . . ."

The foregoing language was initially adopted at the same time the current language of the PREAMBLE was adopted, on August 10, 2004, 69 FR 48740.

35. In the 2004 PREAMBLE, 7 C.F.R. §457.8 states that the AIP will use the procedures (handbooks, manuals, memorandum and bulletins) issued by FCIC in the administration of the policy. The particular handbooks and manuals that are relevant to this case are the Crop Insurance Handbook ("CIH") (FCIC Document 18010-01), the Loss Adjustment Manual Standards Handbook ("LAM") (FCIC Document 25010), the General Standards Handbook ("GSH") (FCIC Document 18190) and the Document and Supplemental Standards Handbook ("DSSH") (FCIC Document 24040). Collectively, these documents will be described as "Handbooks".

36. FCIC periodically amends the Handbooks.

37. From June of 2010 through November of 2019, the CIH was amended at least 7 times.

38. From February of 2011 through April of 2020, the LAM has been amended 12 times.

39. The GSH was first published in June of 2015 for the 2016 Crop Year and is described as combining general administrative procedures that apply across all plans of insurance. It has been amended every year since 2015.

40. From June of 2015 through November of 2019, DSSH has been amended 7 times.

41. None of the foregoing Handbooks were ever adopted by RMA/FCIC through the issuance of regulations or were published in the Federal Register as required by the Administrative Procedure Act (5 U.S.C. §§551 *et seq.*). Rather, they were simply adopted and amended as deemed necessary by RMA/FCIC, without the necessary notice and comment period required by §553 (b) and (c).

42. The PREAMBLE appears before the AGREEMENT TO INSURE and its language is not part of the specific contract of insurance. The Federal Defendants rely upon the language of the PREAMBLE to raise the terms and procedures contained in the Handbooks to the enforceability level of duly adopted regulations.

43. The Handbooks are internal manuals which do not have the force of regulation. *See* Struss v United States Department of Agriculture, Case No. 18-2184-JWL (U.S.D.C. Kan. 2019).

44. Agency determinations can be set aside if agency decisions are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law and without observance of procedure required by law, or if the agency fails to consider important aspects of the problem, offered an explanation for its decision that fails to address the issue presented, runs counter to the evidence before the agency or is so implausible that it could not be ascribed to difference in view or product of agency expertise.

45. A justiciable controversy exists between the parties, the dispute is ripe for adjudication, and the Plaintiff has no other adequate remedy at law.

**COUNT I – Judicial Review of Interpretation of Procedure Dated September 21, 2021**

46. The Plaintiff is entitled to and hereby seeks review of an Interpretation of Procedure dated December 13, 2021, issued by the Federal Defendants and judgment in its favor. 5 U.S.C. §701 *et. Seq.*; 7 C.F.R. §11.13; 7 U.S.C. §1598.

47. The Plaintiff realleges Paragraphs 1-45 as if fully set forth herein.

48. As stated in Paragraph 15(a) above, one of the issues in dispute is whether the Plaintiff provided an acceptable production report to NAU in a timely fashion.

49. A production report is how a producer reports its production by field for prior years. The producer's production information for the prior years is necessary to calculate the producer's production guaranty for the current crop year based upon actual production history. *See* Paragraphs 12 and 13, above.

50. On September 20, 2021, the Plaintiff and NAU submitted a Joint Request for Interpretation of Procedure seeking a determination of what constitutes an "acceptable production report". A copy of this request is attached hereto as Exhibit 4.

51. Although the joint request indicated that the request was for an interpretation of Section 1302A of the Crop Insurance Handbook ("CIH"), the Plaintiff

argued that (1) what constitutes an acceptable production report is a factual issue subject to determination by the arbitrator, and (2) that Section 1302A of the CIH was merely a recitation of the definitions and requirements of the Common Crop Insurance Policy which are contained in 7 CFR §457.8 and (3) that the CCIP as set forth in §457.8 controls any procedures or requirements contained in the CIH or the DSSH.

52. The Plaintiff further argued that 7 CFR §457.8 does not state that the information required for an acceptable production report needs to be on a particular form, needs to be contained in a single document or needs to be provided all at the same time.

53. The Plaintiff argued that the only requirements for an acceptable production report are stated in the CCIP and that whether such requirements have been met by the policyholder are factual issues which must be decided by the arbitrator without reference to any Handbooks.

54. NAU argued that to be an acceptable production report, the document must satisfy all the conditions set forth in Section 1302A of the CIH and must conform to the guidelines set forth in §302 and §306 and Exhibit 2 of the DSSH, including the "Substantive" standards contained in the DSSH.

55. On December 13, 2021, Defendant RMA responded to the joint request. A copy of this IoP (hereinafter "**CIH IoP**") is attached hereto as Exhibit 5.

56. Defendant RMA stated that FCIC disagreed with the Plaintiff that Section 1302A is a recitation of the definitions and requirements of the Basic Provisions and stated that the CIH "is to be used in the administration of the crop insurance policies as provided in the Basic Provisions Preamble". *See* Paragraph 33, above.

57. **CIH IoP** should be set aside for the following reasons:
(a) RMA relies solely on the CIH and the DSSH in response to the request for this IoP. These handbooks are simply internal manuals which do not have the force of regulation. The handbooks are not part of the CCIP because they were not adopted in accordance with law and without observance of

procedure required by law, specifically the requirements of Section 553 of the Administrative Procedure Act.

(b) RMA failed to consider that the CIH and DSSH impose requirements that are not included in the CCIP and that the CCIP controls over such handbook requirements.

(c) RMA failed to consider or address the questions presented: (1) if the authority to determine whether an "acceptable production report" has been provided to the AIP is a question of fact for the arbitrator to decide and (2) if the arbitrator must look solely to the CCIP, not the Handbooks.

(d) RMA failed to consider or address the questions presented: whether an "acceptable production report" needed to be on a particular form, whether the information needs to be contained in a single document, and whether the information needs to be reported all at the same time, since the CCIP does not address the issue.

58. The position of the Federal Defendants that §1302(A) is *not* a recitation of the terms of the CCIP supports the position of the Plaintiff because *if* §1302(A) is <u>not</u> a recitation of the terms of the CCIP then the CIH is necessarily an expansion of the terms of the CCIP by imposing requirements that are not in the CCIP.

WHEREFORE, the Plaintiff prays for a judgment from this Honorable Court to hold unlawful and set aside the Interpretation of Procedure dated December 13, 2021 issued by the Federal Defendants pursuant to 5 U.S.C. §706(2)(A) and (D); to compel the Federal Defendants pursuant to 5 U.S.C. §706(1) to issue an interpretation of procedure with the interpretation offered by Plaintiff; for costs; and for such further and other relief as this Honorable Court may find just and reasonable.

### COUNT II – Judicial Review of Final Agency Determination 313.

59. The Plaintiff is entitled to and hereby seeks review of Final Agency Determination 313 dated August 25, 2022, issued by the Federal Defendants and judgment in its favor.  5 U.S.C. §701 *et. Seq.*; 7 C.F.R. §11.13; 7 U.S.C. §1598.

60. The Plaintiff realleges Paragraphs 1-45 as if fully set forth herein

61. Because Defendant RMA did not address the positions of the Plaintiff in CIH IoP as described in Count I, on June 6, 2022, the Plaintiff submitted a request for a policy determination as to the definition of a "production report" and the requirements imposed by Section 3(g) of §457.8. A copy of this request is attached hereto as Exhibit 6.

62. Also on June 6, 2022, NAU submitted its position in response to the Plaintiff's request. A copy of NAU's letter is attached hereto as Exhibit 7.

63. On August 25, 2022, Defendant RMA issued its policy determination designated as **FAD-313**. A copy of this determination is attached hereto as Exhibit 8.

64. The Plaintiff sought a Final Agency Determination related to two provisions contained in the CCIP related to production reports: (1) the definition of "Production Report" contained in Section 1 of the CCIP and (2) the specifics of the certification requirement contained in Section 3(g)(1) of the CCIP.

65. The Plaintiff took the position that the question as to whether the documents submitted by the Plaintiff to NAU constituted a "production report" and whether the documents were "certified" as to their accuracy are questions of fact for determination by the arbitrator.

66. The Plaintiff argued that the CCIP does not require the information required by the CCIP to be on a particular form, needs to be contained in a single document or needs to be submitted all at the same time. It simply defines a production report and that the producer must provide "all information that it used to determine your yield". Section 3(g) of CCIP. Moreover, there is no specific certification language required by the CCIP.

67. In **FAD-313**, Defendant RMA disagreed with the position of the Plaintiff. In doing so, Defendant RMA relied upon the language contained in the Handbooks, specifically the DSSH and the CIH and did not address the issues presented by the Plaintiff.

68. **FAD-313** should be set aside for the following reasons:

(a) RMA relies solely on the CIH and the DSSH in response to the request for a FAD. These handbooks are simply internal manuals which do not have the force of regulation. The Handbooks are not part of the CCIP because they were not adopted in accordance with law and without observance of procedure required by law, specifically the requirements of Section 553 of the Administrative Procedure Act.

(b) RMA failed to consider or address the issue presented by the Plaintiff whether documents supplied to an AIP qualify as an acceptable production report pursuant to the CCIP is a question of fact for the arbitrator to decide without elevating provisions in the Handbooks to the force of law.

(c) RMA failed to consider or address the issue presented by the Plaintiff whether the certification as to the accuracy of information on the production report documents supplied to an AIP qualify as a production report pursuant to the CCIP is a question of fact for the arbitrator to decide without elevating provisions in the Handbooks to the force of law.

(d) RMA failed to consider or address the issue presented by the Plaintiff whether the production report required by Section 3(g)(1) of the CCIP needed to be on a particular form, whether the information needs to be contained in a single document, or whether the information needs to be reported all at the same time.

WHEREFORE, the Plaintiff prays for a judgment from this Honorable Court to hold unlawful and set aside the Final Agency Determination 313 by the Federal Defendants pursuant to 5 U.S.C. §706(2)(A) and (D); to compel the Federal Defendants pursuant to 5 U.S.C. §706(1) to issue Final Agency Determination with the interpretation by Plaintiff; for costs; and for such further and other relief as this Honorable Court may find just and reasonable.

### COUNT III – Judicial Review of Final Agency Determination 306

69. The Plaintiff is entitled to and hereby seeks review of Final Agency Determination 306 dated December 16, 2021, issued by the Federal Defendants and judgment in its favor. 5 U.S.C. §701 *et. Seq.*; 7 C.F.R. §11.13; 7 U.S.C. §1598.

70. The Plaintiff realleges Paragraphs 1-45 as if fully set forth herein.

71. On September 20, 2021, the Plaintiff and NAU submitted a joint request for the interpretation of Section 3(f)(3) of §457.8 of the CCIP. The purpose of submitting this request related to an issue that arose during the preparation for the arbitration. A copy of this request is attached hereto as Exhibit 9.

72. The issue that was raised related to how the several fields of onions grown by the Plaintiff were to be reported to NAU and how the production from these fields was to be used in the calculation of any indemnity payable to the Plaintiff.

73. Under the provisions of the CCIP, farmers such as the Plaintiff are required to insure all their fields producing a given crop in any given county. Groups of fields (fields which grow the same crops in the same counties) are generally categorized as a "basic unit" and all production from all the fields are combined to determine production and any possible indemnity. However, the CCIP allows the farmer to elect to insure the various fields as "optional units". The concept is to allow each field within the basic unit to stand on its own in determining if any indemnity is due, so that if a loss occurs on only one field within the basic unit, the production from other non-loss fields will not be included with the production from the field which suffered a loss.

74. The issue arose because the Plaintiff did not report any 2019 production for a single optional unit prior to effective date of the 2020 Policy. For purposes of this Complaint, this optional unit will be identified as Optional Unit 25, or OU 25. The Plaintiff did not report any 2019 production on OU 25 because the Plaintiff did not begin growing any crops on OU 25 until after the start of the 2020 Crop Year. Moreover, the Plaintiff had no adequate land identifier for OU 25 as supplied by the Farm Service Agency ("FSA"). In other words, the Plaintiff did not have any production to report for OU 25 from the 2019 Crop Year.

75. Ultimately, however, the Plaintiff obtained an FSA number and planted onions on OU 25. The Plaintiff kept accurate records of production on OU 25. The Plaintiff reported the production to NAU but understood that this optional unit was not insurable.

76. The issue was whether the production from OU 25 had to be combined with the production from the other optional units (on a pro-rata basis) to determine the amount of production on the other optional units, thus affecting the amount of the indemnity.

77. The Plaintiff took the position that the only optional units that can be combined into a basic unit for the current crop are those optional units which were insured during the prior crop year and for which prior production and acreage needed to be and could be reported for the 2019 Crop Year.  Additionally, the Plaintiff took the position that any proposed optional units that were not farmed in any prior years and therefore had no production that could be reported by the production reporting date are not to be combined into the basic unit in the current crop year.

78. NAU took the position that Section 3(f)(3) of the CCIP does not limit the collapse of optional units to only those units insured during the prior crop year, and that the provision does not state that the only optional units insured in the prior crop year will be combined. NAU further took the position that Section 3(g)(1) of the CCIP "may not be interpreted in a manner that is inconsistent with the CIH".

79. On December 16, 2021, Defendant RMA issued its policy determination designated as **FAD-306**.  A copy of this determination is attached hereto as Exhibit 10.

80. **FAD-306** simply recites the provisions of the CCIP, that "production and acreage for the prior crop year must be reported for each optional unit by the production reporting date".  Additionally, **FAD-306** reads: "As provided in section 3(f)(3) of the CCIP Basic Provisions, if production and acreage for the prior crop year is not reported for **each** proposed optional unit by the PRD [Production Reporting Date], unless otherwise specified in the Special Provisions; optional units are combined into **the** basic unit from which they were formed.  This would include all optional units insured in the crop year, including proposed optional units in the policyholder's operation." [bold in the original]

81. **FAD-306** should be set aside for the following reasons:

(a) **FAD-306** fails to consider important aspects of the problem presented. Specifically, whether a field which was not farmed in the prior crop year (having no production to report by the PRD) should in fact be considered an "optional unit" or a "proposed optional unit". Whether such unit was in fact an "optional unit" or a "proposed optional unit" is a factual question for determination by the arbitrator. The position of NAU that the CCIP must be interpreted to be consistent with the CIH is not in accordance with the priorities established by the CCIP. The exact opposite is true – the CIH must be interpreted to be consistent with the CCIP. No Interpretation of Procedure or FAD, nor any Handbook may add or subtract any requirements or obligations of the producer that are not part of the CCIP.

(b) **FAD-306** fails to specifically address the issue as to whether the production from optional units that have no production to report for the prior crop year and were not even established prior to the acreage reporting date should be combined with other optional units.

WHEREFORE, the Plaintiff prays for a judgment from this Honorable Court to hold unlawful and set aside Final Agency Determination 306 pursuant to 5 U.S.C. §706(2)(A) and (D); to compel the Federal Defendants pursuant to 5 U.S.C. §706(1) to issue an Agency Determination with the interpretation offered by Plaintiffs; for costs; and for such further and other relief as this Honorable Court may find just and reasonable.

**COUNT IV – Judicial Review of Interpretation of Procedure dated April 21, 2022**

82. Plaintiff is entitled to and hereby seeks review of an Interpretation of Procedure dated April 21, 2022, issued by the Federal Defendants and judgment in its favor. 5 U.S.C. §701 *et. Seq.*; 7 C.F.R. §11.13; 7 U.S.C. §1598.

83. The Plaintiff realleges Paragraphs 1-45 as if fully set forth herein.

84. On February 10, 2022, the Plaintiff submitted a Request for Interpretation of Policy related to the timely filing of an Acreage Report and the

applications of Paragraphs 934 and 1234 of the Loss Adjustment Manual Standards Handbook (FCIC 2501 (12-2018)) ("LAM"). A copy of this request is attached hereto as Exhibit 11.

85. The request by the Plaintiff was in response to two Requests for Interpretation of Procedure submitted by NAU on February 3, 2022, one related to Paragraph 934 of the LAM and one related to Paragraph 1234 of the LAM. Copies of NAU's requests are attached hereto as Exhibits 12 and 13.

86. The Requests by the Plaintiff and NAU were submitted in partial response to FAD-306.

87. The issue was whether the Plaintiff had submitted a timely amended Acreage Report, which, according to NAU, was due on March 16, 2020.

88. The Plaintiff submitted an amended Acreage Report including OU 25 on March 20, 2020, immediately after it received Form 578 from the FSA on March 19, 2020. This document contained the "land identifier" required by the acreage report. FSA had the necessary information to complete Form 578 as early as March 10, 2020. However, the delay by FSA in completing Form 578 was clearly caused by the response of the federal and state governments to COVID-19, including MGR 20-026, a bulletin issued by RMA regarding COVID-19.

89. The Plaintiff argued that the March 20, 2020, amended Acreage Report must be considered a timely filed report, that Paragraph 934 of the LAM applies (the production from the OU 25 is not to be allocated to the other optional units) and Paragraph 1234 of the LAM does not apply (the production for OU 25 should be allocated to the other optional units).

90. NAU argued that the amended Acreage Report was not acceptable, that Paragraph 1234 of the LAM does apply and that Paragraph 934 of the LAM does not apply.

91. On April 21, 2022, Defendant RMA issued its response to the February 2022 Requests for Interpretation of Policy ("LAM IoP"). A copy of the LAM IoP is attached as Exhibit 14.

92. The Defendant RMA simply determined that "the policyholder is required to report all insurable and uninsurable acreage by the Acreage Reporting Date. If all acreage is not reported by the ARD, the acreage not reported may be denied liability in accordance with section 6(f). If liability is denied, the production from the unreported units will be allocated in accordance with section 6(f) and paragraph 1234 of the LAM"

93. The **IoP LAM** should be set aside for the following reasons:
    (a) RMA relies on the LAM in response to the request for an Interpretation of Procedure. The LAM is simply an internal manual which does not have the force of regulation. The LAM is not part of the CCIP because it was not adopted in accordance with law and without observance of procedure required by law, specifically the requirements of Section 553 of the Administrative Procedure Act.
    (b) The Defendant RMA failed to address the position of the Plaintiff that the amended Acreage Report must be considered timely due to the specific circumstances surrounding the submission of the document, which would be subject to a factual determination by the arbitrator addressing (1) the failure of FSA to timely provide a farm serial number in spite of having the necessary information and (2) the response by the Federal Defendants to COVID-19, including the various in-person work restrictions and modifications of reporting deadlines. The issue is whether the arbitrator, in making his or her factual findings, can take into consideration the delay caused by external circumstances outside the control of the Plaintiff.
    (c) The Federal Defendants failed to address the issue as to whether the failure of USDA to provide information required on an acreage report can be considered a valid cause for a delay in amending an Acreage Report thus requiring acceptance of the amended Acreage Report.

WHEREFORE, the Plaintiff prays for a judgment from this Honorable Court to hold unlawful and set aside the Interpretation of Procedure issued April 21, 2022

by the Federal Defendants pursuant to 5 U.S.C. §706(2)(A) and (D); to compel the Federal Defendants pursuant to 5 U.S.C. §706(1) to issue an interpretation of procedure with the interpretation offered by Plaintiffs; for costs; and for such further and other relief as this Honorable Court may find just and reasonable.

Respectfully submitted,

**LAW OFFICES OF DANIEL C. JENKINS, LLC**

By:_____
Daniel C. Jenkins
daniel@djenkinslaw.com
24 Drayton Street
Suite 24
Savannah, GA 37401
Tel. 912-480-9999
Georgia Bar No. 142345

**HAWKINS, HAWKINS & BURT, LLP**

By:_____
David A. Burt
davidburt@hawkinsandburt.com
501 South Ridgewood Ave.
Daytona Beach, FL 32114
Telephone:  386-252-4499
Facsimile:   386-258-1311
Florida Bar No. 197955